United States District Court
Northern District of Indiana
Hammond Division

| | |
|---|---|
| DENVER D. COLDIRON,<br><br>                Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISIONER OF SOCIAL<br>SECURITY,<br><br>                Defendant. | Civil Action No. 2:11–CV–413 JVB |

**OPINION AND ORDER**

Plaintiff Denver D. Coldiron seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied his application for Supplemental Security Income disability benefits under the Social Security Act. Plaintiff requests that this court set aside the Decision of the Administrative Law Judge, or in the alternative, that the matter be reversed and remanded for further proceedings. For the following reasons, the Court affirms the Commissioner's decision.

**A. Procedural Background**

On October 12, 2007, Plaintiff filed a Disability Insurance Benefits application, alleging that he became disabled on November 30, 2003. (R. 161.) This claim was denied initially and upon reconsideration. The ALJ determined that Plaintiff was not disabled because jobs he could

1

perform existed in significant numbers in the national economy. (R. 19–20.) On September 23, 2011, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Plaintiff seeks judicial review of Defendant's denial of his claim.

**B.  Factual Record**

**(1)** *Plaintiff's Background and Testimony*

Plaintiff was born in 1950. (R. 36.) He has a GED. (*Id*.) On a typical day, Plaintiff is able to drive, take baths, put clothes in the washing machine and dryer, occasionally entertain visitors, take his dog outside, go to church, talk on the phone, and vacuum small rooms. (R. 56–60.) Also, Plaintiff and his wife go out to eat two to three times per week. (R. 60.) Plaintiff reported that he helps shop for groceries but is unable to lift items into the cart. (R. 59.)

At the hearing, Plaintiff testified that, as a child, he suffered burns from the waist down, requiring hospitalization and multiple surgeries. (R. 50.) In 1981, Plaintiff was hospitalized after suffering burns from a work-related accident. (R. 47–48.) The burns on Plaintiff's hands caused stiffness in cold weather. (R. 62.) Following the accident, Plaintiff did not work for 18 months. (R. 48.) One year later, Plaintiff underwent a follow-up surgery to release the tightening. (*Id*.)

Additionally, Plaintiff reported a history of smoking, admitting he currently smokes three to six cigarettes per day. (R. 71.) Plaintiff testified that he has breathing problems, possibly from materials and dust at the mill, and in 2001, his physician indicated that he had emphysema, asthma, and scarring of the lungs and was prescribed Albuterol for his breathing. (R. 51–52.) Albuterol is the only medication Plaintiff currently takes. (R. 74.) Plaintiff also experienced

coughing spells, what he termed "blackouts," a "rattle in his throat," shortness of breath when climbing stairs, and difficulty standing once he had been sitting for a while. (R. 62, 64, 66–70.)

Around 2002, Plaintiff began experiencing knee pain and testified that his doctor diagnosed the pain as arthritis, prescribed a knee brace, and suggested knee replacement surgery. (R. 49, 53.) Plaintiff did not undergo knee replacement surgery but did take over-the-counter pain medication for his knee pain. (R. 53.) As a result of his knee pain, Plaintiff estimated that he could stand for 15–20 minutes. (R. 65.) Additionally, Plaintiff testified that about a year ago, he was taken to the emergency room and diagnosed with a tear in his stomach. (R. 55.) Plaintiff did not remain in the hospital overnight. (*Id*.)

Plaintiff last worked as an overhead crane operator in 2003. (R. 38.) As a crane operator, Plaintiff was required to climb about three stories to reach the crane and operate controls with his hands. (R. 39–41.) Ultimately, Plaintiff stopped working because of pain and breathing problems. (R. 37.)

**(2)** *Medical Evidence*

On June 13, 1981, Plaintiff was admitted to the hospital after suffering burns to his arms, hands, legs, and hips during a fall into hot water at work. (R. 272, 277.) Plaintiff complained of no other injuries at that time. (*Id*.)

Plaintiff's physical examinations and doctor visits are generally sporadic beginning in 1994. On March 4, 1994, a physician reported that Plaintiff was unable to fully raise his arm due to scarring from burns. (R. 366.) The physician also noted that Plaintiff suffered from hearing loss and recommended hearing protection. (R. 370.)

Three years later, Plaintiff underwent a cystoscopy for the removal of blood clots and bladder surgery. (R. 351.) The following month, a physician again noted Plaintiff's limited range of motion, determining that he was unable to fully raise his arm due to scarring from burns. (R. 356.)

On February 12, 2001, Plaintiff was diagnosed with an irregular heartbeat. (R. 331.) During the same examination, physicians noted continued hearing loss. (R. 340.) One year later, an examination revealed mild obstructive lung disease, wheezing, and coughing. (R. 330.) In February 2003, Plaintiff did not complain of any difficulty hearing. (R. 371.)

Nearly four years later, Plaintiff went to the emergency room, but "everything was normal." (R. 429.)

On January 21, 2008, a state physician noted a hiatal and ventral hernia. (R. 437.) The state physician also noted slight limited range of motion in the right shoulder. (R. 438.) At this time, Plaintiff was taking Prilosec as prescribed by his family physician. (R. 16.) The following week, Plaintiff did not complain of pain in either knee during the examination. (R. 441.)

The following month, a physician prescribed Plaintiff Albuterol for breathing. (R. 52, 445.)

On September 22, 2008, Plaintiff was discharged from therapy after meeting all goals. (R. 464.) At this time, Plaintiff rated knee pain at a 1 on a 0–10 scale, with 10 being the worst pain. (*Id.*)

More than a year later, a chest x-ray revealed emphysema and moderate chronic obstructive lung disease (COPD). (R. 470.)

While Plaintiff claimed he underwent x-rays, there are no x-rays evidencing any knee injury in the record. (R. 24.) While a physician recommended an x-ray to evaluate Plaintiff's mild osteoarthritis, the record shows no such x-ray. (R. 469.) Similarly, the record reveals no hospital

or emergency room stays. Also, the record does not reflect that Plaintiff experienced fainting spells.

### (3) *Testimony of Medical Expert*

Bernard Stevens, M.D., the Medical Expert, did not examine Plaintiff but based his testimony on the lack of diagnostic tests, x-rays, and hospital stays in the record. (R. 76–77.) While acknowledging Plaintiff's hiatal hernia, Dr. Stevens testified that a hiatal hernia does not cause any functional impairment. (R. 77.) Further, Dr. Stevens opined that well-healed scarring from Plaintiff's burns would not cause any functional limitations. (R. 85.) Dr. Stevens also testified that Plaintiff may have mild COPD, but Plaintiff had "basically normal pulmonary functions." (R. 76.) Ultimately, Dr. Stevens concluded that Plaintiff could perform medium work but should not be exposed to temperature extremes or pollutants. (R. 80–82.)

### (4) *Testimony of Vocational Expert*

The ALJ initially asked Ed Bogella, the Vocational Expert (VE), to consider a hypothetical individual who could lift 50 pounds occasionally, lift 25 pounds frequently, stand and walk for six hours, and sit for six hours with the environmental limitation of avoiding concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation. (R. 94.) The ALJ also included the limitation of limited reaching ability in all directions, including overhead, of the right arm. (R. 94.) From this hypothetical, the VE determined that Plaintiff could not perform his previous relevant work because of his limited reaching ability of the right arm. (R. 94–95.)

The ALJ then altered the hypothetical, removing the reaching limitation. (R. 96–97.) The VE concluded that Plaintiff still could not perform his previous relevant work but could perform work as a laundry worker, grocery bagger, or store clerk, with 16,000, 13,000, and 14,000 positions existing in the regional economy. (R. 97–98.)

**(5)** *The Administrative Law Judge's Decision*

The ALJ determined that Plaintiff met the disability insured status requirements of the Act through December 31, 2008. (R. 14.) Further, the ALJ concluded that Plaintiff had one severe impairment and had not engaged in substantial gainful activity since the onset date of his alleged disability. (R. 14–15.) The ALJ, however, found that Plaintiff did not have any impairment or combination of impairments that met or equaled any of the impairments included in the Listing of Impairments. (R. 14–15.) Additionally, the ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform a limited range of medium work but should avoid concentrated exposure to extreme cold, extreme heat, humidity, and pollutants. (R. 15.) Given this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work but was able to perform jobs that existed in significant numbers in the national economy. (R. 20–22.) The ALJ also determined that some of Plaintiff's allegations were not credible. (R. 19.) Ultimately, the ALJ found that Plaintiff was not disabled. (R. 20–22.)

Plaintiff alleges that the ALJ made four reversible errors. (Pl.'s Mot. Summ. J.) First, Plaintiff claims the ALJ failed to develop a full and fair record. (Pl.'s Mot. Summ. J. 7–13.) Second, Plaintiff argues that the ALJ failed to consider Plaintiff's severe and non-severe impairments in the aggregate. (Pl.'s Mot. Summ. J. at 13–14.) Third, Plaintiff claims the ALJ

improperly assessed his credibility. (Pl.'s Mot. Summ. J. 15–18.) Finally, Plaintiff argues the ALJ failed to follow the requirements of Social Security Ruling 96–6p. (Pl.'s Mot. Summ. J. 18–19.)

## C. Standard of Review

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002).

## D. Disability Standard

To qualify for Disability Insurance Benefits, the claimant must establish that he suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step

inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*See Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. (*Id.*) The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**E. Discussion**

Using the five-step analysis developed by the Secretary, the ALJ denied Plaintiff's claim. Steps 1 and 2 are not at issue as the parties agree that Plaintiff is not currently employed, and the ALJ determined that Plaintiff does have one severe impairment. (R. 14–15.) Step 4 is also not at issue as both parties agree that Plaintiff is unable to perform his past relevant work. (R. 20–21.) Steps 3 and 5 are at issue. As a result, plaintiff requests that this court set aside the Decision of the ALJ, or in the alternative, that the matter be reversed and remanded for further proceedings.

**(1)** *The ALJ neither failed to develop a full and fair record nor erred in assessing Plaintiff's RFC.*

Plaintiff claims the ALJ erred because he failed to develop a full and fair record. (Pl.'s Mot. Summ. J. at 7–13.) Similarly, Plaintiff claims the ALJ should have included Plaintiff's alleged

8

knee impairment to properly determine his RFC. (*Id*.) Specifically, Plaintiff argues that the ALJ should have ordered x-rays or other diagnostic tests to properly assess the extent of his knee impairment, thereby developing a full record. (*Id*.) To support this argument, Plaintiff cites decisions from the Seventh Circuit that have determined that the ALJ must develop a full and fair record. *See Thomson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991); *see also Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

While Plaintiff is correct that these cases require the ALJ to develop a full and fair record, the ALJ has done so in this case. Plaintiff bears the burden of supplying adequate evidence to prove a claim of disability. 20 C.F.R. § 404.1512(c). Aside from a single physician's suggestion to undergo an x-ray for "mild osteoarthritis," Plaintiff fails to offer any evidence suggesting that an x-ray or other diagnostic text would have revealed severe osteoarthritis. (R. 469.) Further, the only treatment Plaintiff underwent for an alleged knee impairment was a month of physical therapy in August 2008. (R. 464.) Thereafter, Plaintiff was discharged, noted to have "met all goals," and rated knee pain as just a 1 on a scale of 0–10, with 10 being the most severe. (*Id*.) Plaintiff declined to undergo a functional capacity examination following his discharge. (*Id*.) Consequently, Plaintiff has offered no evidence suggesting that the ALJ erred in her assessment of Plaintiff's RFC.

Additionally, Plaintiff argues that the ALJ admitted to not developing a full record. (R. 19.) Plaintiff, however, is reading this statement too broadly. The ALJ concluded that the medical evidence presented is much too *limited* to conclude that Plaintiff suffered a severe knee impairment, not that the record itself was too limited. (R. 18–19.)

**(2)** *The ALJ did not fail to consider severe and non-severe impairments in the aggregate.*

Plaintiff claims the ALJ erred because she did not consider Plaintiff's severe and non-severe impairments in the aggregate. (Pl.'s Mot. Summ. J. at 13–14.) Plaintiff properly cites *Villano v. Astrue*, for the proposition that the ALJ must consider both severe and non-severe impairments. 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling."). Here, the ALJ considered "all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence." (R. 15.)

Specifically, the ALJ adequately considered all symptoms by following a two-part test: (1) determining whether there is an underlying medically determinable impairment, and (2) evaluating the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit Plaintiff's functioning. (R. 15.) At step 1, the ALJ evaluated Plaintiff's moderate hearing loss, history of burns to legs, groin, and shoulders, well-healed scarring from those burns, history of smoking, trouble with keeping food down, mild discomfort in shoulder area, hiatal and ventral hernias, slight shortness of breath, emphysema, decreased right knee pain following therapy, no left knee pain, no swelling in either knee, good bilateral knee reflexes, unremarkable neurological exams, limitation of frequent reaching, mild COPD, no x-rays or MRIs evidencing a knee impairment, and no reports of hospitalizations or emergency room visits (R. 15–17.) Additionally, the ALJ considered Plaintiff's testimony regarding his daily activities. (R. 18.) Further, the ALJ evaluated the Medical Expert's testimony, noting that much of Plaintiff's testimony was not corroborated in the record. (R. 18.)

Therefore, the only impairment evidenced by objective medical findings is Plaintiff's COPD. (R. 18.) At step 2, the ALJ evaluated the intensity and persistence of this impairment, accepting

the medical expert's opinion that Plaintiff's COPD was mild and would not produce any severe functional limitations. (R. 18.) The ALJ also considered Plaintiff's infrequent trips to the doctor and conservative treatment for this impairment. (R. 19.) Ultimately, the ALJ properly assessed the intensity, persistence, and possible limitations from Plaintiff's COPD, finding that the impairment was not listed or equal to a listing in 20 C.F.R. § 404. (R. 18–19.)

### (3) *The ALJ properly assessed Plaintiff's credibility.*

Plaintiff claims the ALJ erred in finding Plaintiff not credible. (Pl.'s Mot. Summ. J. at 15–18.) The ALJ's credibility finding is entitled to "considerable deference" and will not be disturbed unless it is "patently wrong." *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). To determine credibility, the ALJ must consider several factors including, but not limited to, the Plaintiff's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, and limitations. *See* 20 C.F.R. § 404.1529(c). Further, the ALJ must justify the credibility finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Here, the ALJ considered the relevant factors and justified her credibility finding with specific reasons in addition to a lack of medical evidence. (R. 15–20.)

While Plaintiff complained mainly of right knee pain, limitations in reaching, and COPD, the ALJ determined that the intensity of Plaintiff's impairments is not supported in the record. For example, while Plaintiff testified to undergoing x-rays and suffering from "blackouts," the record reveals no x-rays, extended hospital stays, emergency room stays, or fainting spells. (R. 15–17.) Additionally, the record reveals no instances in which a treating or non-treating physician indicated that Plaintiff was disabled. (R. 19.) In sum, the ALJ determined that Plaintiff's testimony was not supported by medical evidence. (*Id.*)

However, "a lack of medical evidence alone is an insufficient reason to discredit testimony." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1529(c)(2). Therefore, the ALJ also considered whether Plaintiff's daily activities were consistent or inconsistent with the pain and limitations he claimed as required by *Villano*. 556 F.3d at 562. The ALJ then determined that the ability to drive at least ten miles, take the dog outside, entertain company, grocery shop, and do laundry is "not consistent with an individual suffering from a debilitating lung disease." (R. 20.)

**(4)** *The ALJ did not improperly disregard the State Physician's Finding.*

Plaintiff claims the ALJ erred by failing to follow the requirements of Social Security Ruling 96–6p,[1] but this claim is without merit. (Pl.'s Mot. Summ. J. 18–19.) The ALJ followed the requirements of SSR 96–6p by evaluating both the state physician's findings and the medical expert's testimony. (R. 16–19.) Only then did the ALJ conclude that the medical expert's testimony should be given more weight because it was more extensively supported by the medical record. (R. 18–19.)

**F. Conclusion**

---

[1] Social Security Ruling 96-6p:

> 1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
> 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

The ALJ relied on substantial evidence in concluding that Plaintiff is not disabled under Social Security Administration standards. Therefore, this Court AFFIRMS the ALJ's decision.

SO ORDERED on November 9, 2012.

  S/ Joseph S. Van Bokkelen

JOSEPH S. VAN BOKKELEN

UNITED STATES DISTRICT JUDGE